# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

CAROLYN HOLMES,                        )
                                       )
          Plaintiff,              )
                                       )
v.                                     )     Case No. 12-CV-225-CVE-PJC
                                       )
SOUTHWESTERN REGIONAL                  )
MEDICAL CENTER, INC.,                  )
                                       )
          Defendant.              )

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Enforce Settlement Agreement and Brief in Support (Dkt. # 18). Defendant claims that plaintiff executed a severance agreement when she resigned her employment, and that she failed to timely revoke her acceptance of the severance agreement, and that she has waived her right to bring claims arising out of her employment by virtue of the severance agreement. The Court advised the parties that defendant's motion would be treated as a motion to dismiss. Dkt. # 18. Instead of responding to the argument raised by defendant, plaintiff generally argues that she has stated claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA), and she asks the Court to deny defendant's motion as an improper motion under Fed. R. Civ. P. 12(b)(6).[1]

---

[1] Plaintiff seeks attorney fees for having to respond to an "inappropriate" motion to dismiss raising a severance agreement that she did not mention in her complaint. Dkt. # 22, at 6. The Court's order (Dkt. # 19) advising the parties that defendant's motion would be treated as a motion to dismiss did not direct plaintiff to ignore the argument raised in defendant's motion and, whether defendant's motion is denied or granted, the motion is not frivolous. Plaintiff's request for attorney fees is denied and, in the future, she is advised to respond to the arguments raised by defendant.

# I.

Carolyn Holmes states that she worked as an Oncology Information Specialist for the Cancer Treatment Centers of America, also known as the Southwest Regional Medical Center (SRMC), and she claims that she requested a part time work schedule beginning in September 2006. Dkt. # 2, at 3. SRMC granted her request and allowed Holmes to work part time. Holmes describes her principal job duty as "fielding calls from potential patients who are responding to [SRMC's] massive advertising efforts . . . ." Id. Holmes claims that she began to suffer from migraine headaches in late 2009 or early 2010, and her doctor advised her that she might have multiple sclerosis. Id. Holmes alleges that she told SRMC of her doctor's concerns.

Holmes remained on a part time work schedule through 2010, but she claims that SRMC began to re-route phone calls to other employees to reduce her call volume and cause Holmes' work performance to fall below accepted levels. Id. In January 2011, Holmes claims that she resumed full time work "solely to save her job," but she "simply couldn't take the workload and hours, and went back to part time" in May 2011 Id. at 3-4. Holmes alleges that SRMC inappropriately "counseled" her for missing work on eight occasions when she already notified SRMC that she would be taking time off due to her medical condition. Id. at 3. Holmes claims that she requested intermittent FMLA leave in May 2011, but SRMC refused to process her request and would not allow her to take FMLA leave. Id. at 4. Holmes was hospitalized on July 11, 2011 and her doctor ordered a brain scan to determine if Holmes had lesions on her brain. Holmes claims that she notified defendant of her doctor's advice. Id.

Holmes was discharged from the hospital on July 13, 2011, and SRMC asked her to report to work early on the following day. Id. She claims that SRMC terminated her employment on July

2

14, 2011, and she believes that SRMC fired her because she may have had multiple sclerosis.  Id.  SRMC disagrees with Holmes' description of the end of her employment.  SRMC claims that it offered Holmes a severance package including continued health benefits, debt forgiveness, and severance pay.  Dkt. # 18, at 1; Dkt. # 18-2, at 1-2.  In exchange for these benefits, Holmes agreed to "WAIVE, SETTLE AND RELEASE ALL CLAIMS I HAVE OR MIGHT HAVE AGAINST SRMC . . . ."  Dkt. # 18-2, at 2.  Holmes signed the severance agreement and submitted a letter of resignation.  Dkt. # 18-1, at 1; Dkt. # 18-2, at 2.  The severance agreement states that Holmes had seven days to revoke her acceptance and, if she failed to revoke or rescind within that time period, the severance agreement would be enforceable.  Dkt. # 18-2, at 2.

On July 18, 2011, Holmes sent a letter to SRMC rescinding her letter of resignation, but she did not ask SRMC to invalidate the severance agreement.  Dkt. # 18-3.  SRMC states that it was unclear if Holmes intended to back out of the severance agreement, and it sent her a letter asking her to clarify her intentions.  Dkt. # 18-4.  On July 29, 2011, SRMC received a second copy of the same letter sent by Holmes on July 18, 2011, but this copy of the letter was signed by Holmes on July 25, 2011.  Dkt. # 18-5.  SRMC states that it was performing under the severance agreement by continuing to provide Holmes health insurance and affirming its agreement to make severance payments to Holmes.  Dkt. # 18, at 2.  SRMC claims that Holmes used her health insurance to obtain four prescription drug medications, and she could not have utilized the health insurance without the severance agreement.  Id.  On August 4, 2011, Holmes sent a letter to SRMC clarifying that revoked her resignation and her acceptance of the severance agreement, and she asked SRMC not to "send [her] any severance pay or other benefits associated with the settlement agreement."  Dkt. # 18-6.

On April 18, 2012, Holmes filed this case against SRMC alleging that her employment was terminated in violation of the ADA and the FMLA. Dkt. # 2. Holmes' complaint does not reference the severance agreement. She claims that she was a person with a disability or SRMC regarded her as disabled, and that SRMC violated the ADA by failing her to offer her an accommodation. Id. at 5. She also claims that her employment was terminated in violation of the FMLA, because SRMC knew that Holmes wanted intermittent FMLA leave but it failed to process her request for such leave.[2]

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly,

---

[2]     It is not clear from the complaint if plaintiff intends to allege an FMLA claim for interference with FMLA rights, retaliation for requesting FMLA leave, or both theories.

4

550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendant asks the Court to dismiss this case, because plaintiff waived her right to bring claims, including ADA and FMLA claims, under the terms of the severance agreement.  Plaintiff has not responded to this argument and, instead, argues that she has stated valid claims under the ADA and the FMLA.

Defendant argues that state law applies when determining whether the severance agreement is binding and enforceable.  Dkt. # 18.  In general, "[i]ssues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." Shoels v. Klebold, 375 F.3d 1054, 1060 (10th Cir. 2004); see also Bledsoe v. Palm Beach County Soil and Water Conservation Dist., 133 F.3d 816, 819 (11th Cir. 1998).  However, the Court must determine whether plaintiff has knowingly and voluntarily waived her ADA and FMLA claims, and this issue is decided as a matter of federal law.  Skirchak v. Dynamics Research Corp., 508 F.3d 49, 57-58 (1st Cir. 2007); Torres v. Public Service Co. of New Mexico, Inc., 908 F.2d 687, 689-90 (10th Cir. 1990) (quoting Cirillo v. Arco Chemical Co., 862 F.2d 448, 451 (3d Cir. 1988)).  A person may waive a federal remedial right, such as a claim under the ADA, FMLA, or Title VII, but the waiver must be knowing and voluntary under the totality of the circumstances.  Wright v. Southwestern Bell

Telephone Co., 925 F.2d 1288 (10th Cir. 1991); Poppelreiter v. Straub Int'l, Inc., 2001 WL 1464788

(D. Kan. Oct. 30, 2001).   To find a valid waiver of federal remedial rights, the Court must consider:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known [her] rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

Torres, 862 F.2d at 689-90.  If the employee's waiver is knowing and voluntary, the agreement will

be enforced absent a showing of fraud, duress, lack of consideration, or mutual mistake.  Reed v.

Nellcor Puritan Bennett, 244 F. Supp. 1205, 1211 (D. Kan. 2003).

It is immediately apparent that Torres requires a fact-intensive analysis of the circumstances

surrounding the negotiation and execution of the severance agreement, and this type of analysis is

not appropriate on a motion to dismiss or on the record before the Court.  The parties should be

given an opportunity to conduct discovery before the Court rules on the enforceablity of plaintiff's

waiver.  For example, defendant argues that plaintiff's conduct showed an intent to accept the

severance agreement by performance due to her decision to accept insurance benefits following her

resignation, but there is no evidence, other than defendant's statements, to support defendant's

argument.  See Dkt. # 18, at 6.  The Court also notes that neither party has provided an analysis of

the Torres factors, and the parties should be given a chance to present their arguments on the validity

of the waiver of claims contained in the severance agreement.  Defendant may re-urge its argument

concerning the enforceability of the severance agreement in a motion for summary judgment

following a reasonable opportunity for discovery, but defendant's motion to dismiss should be

denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Enforce Settlement Agreement and Brief in Support (Dkt. # 18) is **denied**.

**DATED** this 26th day of September, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE