# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

CAROLYN HOLMES, )
 )
       Plaintiff, ) Case No. 12-CV-225-JED-PJC
v. )
 )
SOUTHWESTERN REGIONAL )
MEDICAL CENTER, INC., )
 )
       Defendant. )

## OPINION AND ORDER

Before the Court are numerous motions in limine filed by the defendant (Doc. 103, 104, 105, 106, 107, 108, 109, and 110) and the plaintiff (Doc. 111). The background facts of this case are summarized in the Court's Opinion and Order (Doc. 134) on the defendant's summary judgment motion and will not be repeated here.

### I.     Defendant's Motions in Limine

**A.    Motion to Exclude Discussion of Unexhausted Claims (Doc. 103)**

Defendant seeks a pretrial ruling to prohibit plaintiff from "mentioning, arguing, or presenting testimony or evidence of any kind regarding (1) Plaintiff's alleged request for a reduced sales quota or (2) her alleged request for a leave of absence under the Family and Medical Leave Act ('FMLA') as potential accommodations under the Americans with Disabilities Act ('ADA'), because neither of these claims were administratively exhausted in Plaintiff's Charge of Discrimination ('Charge') with the Equal Employment Opportunity Commission ('EEOC')." (Doc. 103 at 1). With respect to sales quota, plaintiff responds that she

does not intend to introduce evidence of a reduced sales quota as an accommodation (Doc. 116), and thus the motion in limine is **moot** on that issue.[1]

With respect to exhaustion of an ADA accommodation claim based upon FMLA leave, plaintiff asserts that her August 31, 2011 letter to the EEOC, styled "Re: Charge of Discrimination," satisfies the exhaustion requirement on that issue because that letter stated, in part:

> In June I contacted [defendant's] human resources department to determine what leave was available to ensure that any complications that might arise from my post-polio syndrome would not be treated as unscheduled absences or otherwise have an adverse affect [sic] on Ms. Falconetti's evaluation of my performance. Despite repeated attempts to speak with the HR department, none of my calls were returned.

(Doc. 116-1 at 2-3). If this assertion was part of her Charge of Discrimination, it provided enough facts to prompt an investigation by the EEOC of the plaintiff's claim that her employer failed to accommodate her disability by allowing her leave. However, it is unclear to the Court whether the letter was attached to her Charge of Discrimination. In summary judgment briefing, the parties each provided what they represented to be plaintiff's Charge of Discrimination. Defendant's version contained the one-page form Charge of Discrimination (Doc. 87-16, cited in the Motion in Limine, Doc. 103 at 2). The version provided by plaintiff included plaintiff's August 31, 2011 letter as an attachment to the Charge of Discrimination. (*See* Doc. 96-26 at 3-5). The parties have not addressed that discrepancy, and the Court is unable to determine the exhaustion issue as presented by the parties, because it is unknown whether the August 31 letter was attached to and thus provided further information in support of her EEOC Charge at the time it was made.

---

[1] However, plaintiff is cautioned that the Court will hold plaintiff to her representation of an intent not to introduce such evidence.

At this time, the Court will **reserve ruling** on the motion in limine relating to the exhaustion argument (Doc. 103). The defendant may renew its limine request at the pretrial conference, and the parties shall be prepared to discuss and argue the exhaustion issue at that time.

B.   **Motion to Exclude Evidence of Falconetti as Similarly Situated (Doc. 104)**

A plaintiff may show pretext by proving that the employer's proffered reasons for the adverse employment action are "unworthy of belief." *Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) (citation omitted). A plaintiff "can meet this standard by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.*; *see also Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 546 (10th Cir. 2014). One of the methods of proving pretext is to show that the employer treated the plaintiff differently from "other similarly-situated employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Defendant argues that, *as a matter of law*, Annabelle Falconetti cannot be considered to be a "similarly situated employee" because Falconetti was the Oncology Information Specialist (OIS) Team Lead and was plaintiff's immediate supervisor. (Doc. 104, 121). In support of that proposition, defendant cites two decisions of the Tenth Circuit. (*See* Doc. 104 at 2). In one of those cases, *Jones v. Denver Post Corp.*, 203 F.3d 748 (10th Cir. 2000), an employee argued that his employer had treated one of the employee's supervisors differently. Specifically, the employer disciplined the plaintiff for using employer phones to conduct his outside business, but

3

did not discipline his supervisor for taking pastry orders during business hours. The Tenth Circuit stated that the comparison between the employee and his supervisor was "not legally relevant" and the supervisor "cannot be deemed similarly situated in a disciplinary matter such as this one." *Id.* at 753. The court did not cite any authority for that statement.

In the second Tenth Circuit case cited by the defendant, *Watts v. City of Norman*, 270 F.3d 1288 (10th Cir. 2001), a fire department captain was involved in a physical altercation with one of his subordinates. The captain was demoted to firefighter, and he subsequently brought a racial discrimination suit against his employer. The employer asserted that the plaintiff was demoted because he failed to recognize and defuse an explosive situation and, instead, escalated the confrontation, which led the employer to lose confidence in the employee's supervisory ability. The plaintiff asserted that the explanation was pretextual because the subordinate firefighter was not disciplined for the altercation. The Tenth Circuit cited *Jones* for the proposition that "employees may not be 'similarly situated' when one is a supervisor and the other is not." *Watts*, 270 F.3d at 1293. The court nonetheless went on to examine the full context of the evidentiary record before concluding that the plaintiff was not similarly situated to the subordinate firefighter. *See id.* at 1293-96.

Both of these decisions pre-date cases that have made clear that *per se* rules of evidentiary exclusion on issues relating to whether employees are "similarly situated" are disfavored. For example, both the Tenth Circuit and the United States Supreme Court have determined that it is error for a district court to apply a *per se* rule that, to be similarly situated, employees must share the same supervisor. *See Sprint / United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008) (discussing Tenth Circuit's decision that application of a *per se* rule would be error). In *Sprint*, which involved an age discrimination claim, the district court entered a minute

4

order granting a defendant's motion in limine to exclude testimony from other employees outside of the plaintiff's work group. Those other employees had different supervisors and thus the defendant had argued that they were not "similarly situated" to the employee and were not admissible under the Tenth Circuit's decision in *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997). *Aramburu* held that "similarly situated employees" are "those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." 112 F.3d at 1404. The Tenth Circuit reversed the district court because the Circuit determined that the district court had erroneously applied *Aramburu* to impose a *per se* rule of evidence exclusion. *Sprint*, 552 U.S. at 386. According to the Supreme Court, however, the basis for the district court's ruling was not clear and, because evidentiary issues should be determined by a district court in the first instance, the Supreme Court vacated the Circuit's decision and remanded with instructions to have the district court clarify its decision. The Supreme Court agreed that the application of a *per se* rule would have been error, stating as follows:

> We note that, had the District Court applied a *per se* rule excluding the evidence, the Court of Appeals would have been correct to conclude that it had abused its discretion. Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules.... Applying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry. Because Rules 401 and 403 do not make such evidence *per se* admissible or *per se* inadmissible, and because the inquiry required by those Rules is within the province of the District Court in the first instance, we vacate the judgment of the Court of Appeals and remand the case with instructions to have the District Court clarify the basis for its evidentiary ruling under the applicable Rules.

*Id.* at 387-88.

Generally, in determining whether an employee is similarly situated in a discrimination case, the court should "compare the relevant employment circumstances, such as work history

5

and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they were similarly situated," and whether they are subject to the "same standards governing performance evaluation and discipline." *Kendrick*, 220 F.3d at 1232. Here, the defendant has provided the Court with no information other than the mere fact that Ms. Falconetti was plaintiff's supervisor. Defendant has provided no information to compare Falconetti's and plaintiff's employment circumstances, history, the company's policies (if any) with respect to treating them differently, or otherwise provided any information about whether they were subject to different standards governing performance evaluation and discipline.

In contrast, plaintiff provided excerpts from Falconetti's deposition, in which Falconetti testified that (1) she was the team lead over the Tulsa OIS department in the relevant time frame from July of 2009 to July of 2011, (2) Jay Foley was her supervisor, and (3) during the last quarter that Holmes was employed, while Holmes satisfied 88.8% of her assigned quota, Falconetti also had assigned quota numbers, but fell well short of the 80% quota percentage that the defendant asserts was a purely objective standard. (Doc. 120-1; *see also* Doc. 96-5 at 1-2). Falconetti also testified that she could not recall whether she was "written up" for failing to meet her quota percentage, and she did not believe that she was put on a performance improvement plan (PIP). (Doc. 120-1 at 5). Jay Foley testified that Falconetti did not have the authority to fire other team members and that Foley would exercise that authority based upon data that Falconetti would provide to him. (Doc. 120-3 at 2).

In light of the facts of this case and the more recent case law indicating disfavor for the application of *per se* rules of evidence exclusion, the Court finds at this time that the evidence provided by plaintiff is relevant within the meaning of Fed. R. Evid. 401. The defendant produced employment records listing the Tulsa OIS team's quota numbers and percentages for

the time frame relevant to plaintiff's claims, and those documents *included* Falconetti as one of the employees of the team who, during the last quarter of plaintiff's employment, was assigned quota numbers and percentages. (*See* Doc. 96-5 at 1-2; Doc. 120-5 [Falconetti testified about the page labeled SRMC 000213]). The defendant has provided no explanation for including Falconetti among the others on the list and has not indicated any policy or practice by which she was exempted from the quotas that were assigned to her. Thus, when comparing the only "relevant employment circumstances" and policies that have been provided to the Court, it appears that Falconetti was similarly situated with the plaintiff, at least in that last quarter, with respect to quotas. The defendant argues that it terminated plaintiff's employment based upon its strictly "objective" quota requirements. The evidence that the team lead of the handful of OIS employees did not make even close to 80% of the quotas assigned to her during the last quarter of plaintiff's employment, while plaintiff met 88.8% of her quota in that same time frame but was terminated, appears to support the plaintiff's assertion of pretext. *See* Fed. R. Evid. 401 (evidence having a tendency to make a fact more probable is relevant). It also does not appear to the Court that a jury will be unduly prejudiced or confused by such evidence, given that the defendant may present to the jury any evidence it has to show that Ms. Falconetti was not subject to the same standards or disciplinary actions relating to quotas because of her supervisory role.

At this time, the motion in limine to exclude evidence of Falconetti's quota numbers and percentages (Doc. 104) is **denied**, because such evidence appears relevant to the plaintiff's assertions that quotas and quota percentages were not entirely "objective" as the defendant claims and that plaintiff was treated differently than other employees who were similarly situated. The defendant did not provide any argument for exclusion other than asserting that the evidence should be excluded as a matter of law simply because Falconetti was a team lead, and

the Court is hesitant to determine, as a matter of law or as a *per se* rule, that a team lead who was assigned quotas and included in quota numbers record-keeping for her team can never be "similarly situated" to her team members.

C.      **Motion to Exclude Discussion of Punitive Damages in Liability Phase (Doc. 105)**

Plaintiff agrees that there will be no mention of "punitive damages" unless and until the Court determines that any issue of punitive damages will be presented to the jury. Plaintiff notes, however, that she must be permitted to introduce evidence that shows the Court that punitive damages are recoverable. (Doc. 113). It appears that the parties are in agreement as to the limits of such references, and this motion (Doc. 105) is accordingly **moot**.

D.      **Motion to Exclude Discussion of Other Employees as Similarly Situated (Doc. 106)**

The defendant argues that the Court should exclude evidence relating to any other employee who failed to meet 80% of quotas but was not terminated. That argument is based upon the defendant's assertion that no other OIS employee ever received three PIPs in a row for failure to meet quotas. The Court's Opinion and Order denying summary judgment fully summarized the evidence regarding the PIPs given to plaintiff. (Doc. 134 at 4-7, 16-19). The defendant argues that plaintiff was terminated for failing to meet at least 80% of her year to date quota after having received three PIPs. As the Court noted in the prior Opinion and Order, the first PIP did not even reference a year to date requirement, but instructed plaintiff that she must improve her performance on monthly quotas in the coming quarter. She did that, but was given a second PIP. Plaintiff also provided Falconetti's testimony that the decision to place any employee on a PIP was discretionary. Plaintiff argues that other employees were not disciplined for failing to meet their quotas, and such evidence is relevant to the issue of whether the defendant treated other OIS representatives differently than plaintiff for comparably serious

violations. The Court does not believe the jury will be unduly confused by this issue, as the defendant will be permitted to present its evidence that plaintiff was terminated for an alleged repeated failure to satisfy year to date quota percentages and no other employee had ever so failed to meet year to date quota percentages.

This motion in limine (Doc. 106) is accordingly **denied**.

E.      **Motion in Limine to Exclude Discussion of Net Worth in Liability Phase (Doc. 107)**

Plaintiff agrees that she will not introduce evidence of defendant's net worth during the liability phase of the trial. (Doc. 114). Accordingly, this motion (Doc. 107) is **moot**.

F.      **Motion in Limine to Exclude Golden Rule Evidence (Doc. 108)**

Plaintiff agrees that she will not introduce any "Golden Rule" testimony. (Doc. 115). Accordingly, this motion (Doc. 108) is **moot**.

G.      **Motion in Limine to Exclude Evidence of Certain Damages (Doc. 109)**

The defendant requests a pretrial ruling to exclude any reference by plaintiff to back pay and front pay damages or the possibility of reinstatement because of plaintiff's representations to the Social Security Administration (SSA) in applying for Social Security Disability Insurance benefits (SSDI). The Court referenced the applicable law on this issue in its Opinion and Order and denied defendant's motion for summary judgment which was premised on the same argument. (*See* Doc. 134 at 12-15). The motion in limine (Doc. 109) is **denied** for the same reasons.

H.      **Motion to Exclude Evidence of DeAnne Foley's April 14th Email (Doc. 110)**

The Court previously discussed the April 14, 2011 email exchange between DeAnne Foley and Annabelle Falconetti at length in the Opinion and Order ruling on defendant's request for summary judgment, and the Court specifically addressed the defendant's argument (made in

its reply brief and at the hearing on summary judgment) that the email is irrelevant. (*See* Doc. 134 at 6, 18-19). For the reasons set forth in that Opinion and Order, that email is relevant, and the motion in limine (Doc. 110) is **denied**.

## II. Plaintiff's Motion in Limine (Doc. 111)

Plaintiff requests that the Court enter an order excluding evidence of plaintiff's receipt of SSDI benefits because such benefits should not be introduced in violation of the collateral source rule. The defendant represents that it does *not* intend to introduce evidence of plaintiff's application for and receipt of SSDI benefits "to *offset* damages, but rather, to show Plaintiff is prohibited from receiving damages *at all* based upon her total disability." (Doc. 112 at 4). In essence, the defendant argues that the plaintiff's representations to the SSA regarding her ability to work are directly relevant to the element of whether she was qualified to perform the essential functions of her job. The Court agrees. Applying *Cleveland v. Policy Mgmt. Syst. Corp.*, 526 U.S. 795 (1999), the Court determined that plaintiff had presented evidence which, when construed in her favor, presented a fact issue for the jury. Thus, evidence of her application and receipt of SSDI benefits is relevant to the jury's determination of whether she was qualified to perform the essential functions of her job. Plaintiff's motion in limine (Doc. 111) is accordingly **denied**.

SO ORDERED this 30th day of October, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE